**Samuel Coy HAAGENSEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–10–00198–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 25, 2011.

Decided June 10, 2011.

---

4. Taylor, *supra*, at 4.

6. Royal, *supra*, at 32.

Judy Hodgkiss, The Moore Law Firm, LLP, Paris, for appellant.

Gary D. Young, Lamar County & Dist. Atty., Paris, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

Samuel Coy Haagensen appeals his conviction by a jury for delivery of less than one gram of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102, 481.112 (Vernon 2010). After obtaining a search warrant for Haagensen's residence, Officer Leigh Foreman was contacted by a confidential informant who advised he could make a methamphetamine purchase from Haagensen. Based on this offer, the police officers decided to wait before executing the search warrant. Prior to the purchase, Foreman searched the confidential informant and provided him with money to make the purchase. The confidential informant purchased methamphetamine from Haagensen and an audio recording of the purchase was made. Later that evening, police officers stopped a vehicle being driven by Haagensen and arrested

him. Although no incriminating evidence was found on Haagensen's person, the money provided to the confidential informant was found in a jacket on which Haagensen had been sitting. The police eventually executed a search warrant for Haagensen's residence and discovered scales, baggies, and a spoon with white residue in his bedroom.[1]

The State charged Haagensen with delivery of methamphetamine based on the purchase by the confidential informant. The State alleged the transaction occurred in a drug-free zone because it occurred within 1,000 feet of a day-care center. *See* Tex. Health & Safety Code Ann. § 481.134 (Vernon 2010). The State further alleged that Haagensen had been previously convicted of the felony offense of violation of a protective order. *See* Tex. Penal Code Ann. § 12.42 (Vernon 2011). Haagensen pled not guilty to the charged offense, not true to the drug-free zone, and true to the prior felony conviction. The jury found both enhancements to be true and assessed punishment at fifteen years' imprisonment.

Haagensen raises five issues on appeal. Haagensen argues the evidence is insufficient to support the jury's finding that the transaction occurred in a drug-free zone. In addition, Haagensen claims he received ineffective assistance of counsel and the jury's verdict is defective because it contained the wrong cause number.

## The Evidence Is Sufficient to Support the Drug–Free Zone Enhancement

In his first and second issues, Haagensen argues that the evidence is insuffi-

cient[2] to support the jury's finding that the delivery occurred in a drug-free zone. The State alleged the offense occurred within a drug-free zone (i.e., within 1,000 feet of Little Ark Learning Center). Haagensen argues the evidence is insufficient on two bases: (1) the State failed to prove that the facility was licensed, certified, or registered; and (2) the State failed to prove that the offense was committed within 1,000 feet of the day-care center.

In evaluating sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the drug-free-zone enhancement beyond a reasonable doubt. *Brooks,* 323 S.W.3d at 912 (citing *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Id.* at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing *Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781).

Legal sufficiency of the evidence is measured by the elements of the enhancement as defined by a hypothetically-correct jury charge. *Young v. State,* 14 S.W.3d 748, 750 (Tex.Crim.App.2000) (*Malik* applies to drug-free-zone enhance-

---

1. Drugs were found in other bedrooms not used by Haagensen.

2. Haagensen argues the evidence is legally and factually insufficient. In the *Brooks v. State* plurality opinion, the Texas Court of Criminal Appeals found "no meaningful distinction" between the legal sufficiency standard and factual sufficiency standard. *Brooks*

*v. State,* 323 S.W.3d 893, 902 (Tex.Crim.App. 2010) (plurality decision). A plurality of the Texas Court of Criminal Appeals abolished the factual sufficiency review. *Id.* Since the Texas Court of Criminal Appeals has abolished factual sufficiency review, we need not address Haagensen's challenge to the factual sufficiency of the evidence.

ments); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The "hypothetically correct" jury charge cannot "wholly re-write the indictment," but is not required to "track exactly all of the allegations in the indictment." *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex.Crim. App.2001). "[I]f the penal offense sets out various statutory alternatives for the distinct elements of the crime, the jury charge may contain only those alternative elements that are actually alleged in the indictment." *Cada v. State*, 334 S.W.3d 766, 773 (Tex.Crim.App.2011). Stated succinctly, the hypothetically-correct jury charge must include allegations that are statutory alternatives for an element of the offense and material variances. *See id.*

The State alleged "the above alleged offense was committed in, on, or within 1000 feet of a school, to-wit: Little Ark Preschool...."[3] Section 481.134 provides:

(d) An offense otherwise punishable under Section 481.112(b) ... is a felony of the third degree if it is shown on the trial of the offense that the offense was committed:

(1) in, on, or within 1,000 feet of any real property that is owned, rented, or leased to a school....

TEX. HEALTH & SAFETY CODE ANN. § 481.134(d). Section 481.134 also defines "School" as a day-care center "as defined by Section 42.002, Human Resources Code." TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(5). Section 42.002 defines "Day-care center" as "a child-care facility that provides care for more than 12 children" and defines "Child-care facility" as "a facility licensed, certified, or registered by the department...." TEX. HUM. RES. CODE ANN. § 42.002 (Vernon Supp. 2010). Operation of a day-care facility without a license issued by the State is prohibited; violation of this prohibition subjects the violator to civil penalties. TEX. HUM. RES. CODE ANN. §§ 42.041(a), 42.075 (Vernon Supp. 2010).

The question in this case is whether the definition of a "day-care center" is an element of the offense. Not all definitions constitute elements of an offense. In *Gray v. State*, the Texas Court of Criminal Appeals held that the definition of intoxicant is not an element of the offense of driving while intoxicated. 152 S.W.3d 125, 132 (Tex.Crim.App.2004). The court reasoned the intoxicant did not describe the forbidden conduct, the required culpability, any required result, or the negation of an exception. *Id.*

■ A definition, though, can be an element of the offense. In *Curry*, the Texas Court of Criminal Appeals held the statutory alternatives contained in the definition of "abduction" were essential elements of the offense because the alternatives described the "mens rea" necessary to establish the offense. *See Curry v. State*, 30 S.W.3d 394, 403 (Tex.Crim.App.2000) (State bound by the statutory alternative alleged). In *Curry*, the Texas Court of Criminal Appeals distinguished prior cases where the variance did not describe the forbidden conduct, the required culpability, any required result, or the negation of an exception. *Id.*

Recently, the Texas Court of Criminal Appeals has suggested in dictum that the definition of "owner" is an element of

---

3. Testimony by the child-care director of the facility indicates that the facility is actually called the Little Ark Learning Center, and we will refer to it that way.

theft. *See Byrd v. State*, 336 S.W.3d 242 (Tex.Crim.App.2011) (concluding State bound by its allegation because name of owner was material variance). This Court has recognized the statutory definition of "deliver" is an element of delivery of a controlled substance. *See Stephens v. State*, 269 S.W.3d 178, 180 (Tex.App.-Texarkana 2008, pet. ref'd) (concluding hypothetically-correct jury charge included allegation of constructive delivery); *accord Mihnovich v. State*, 301 S.W.3d 354, 358 (Tex.App.-Beaumont 2009, pet. ref'd) (concluding hypothetically-correct jury charge included allegation of constructive delivery).

■ The Texas Penal Code specifies that forbidden conduct, the required culpability, any required result, or the negation of an exception form elements of an offense. The Texas Penal Code defines an "Element of offense" as:

(A) the forbidden conduct;

(B) the required culpability;

(C) the required result; and

(D) the negation of any exception to the offense.

Tex. Penal Code Ann. § 1.07(a)(22) (Vernon 2011). The definition of "day-care center" describes the forbidden conduct because it limits which day-care centers create a drug-free zone. Unlike primary and secondary schools,[4] not all day-care centers create drug-free zones. Not all day-care centers, though, create drug-free zones. Only "a day-care center, as defined by Section 42.002, Human Resources Code" creates a drug-free zone. Tex.

Health & Safety Code Ann. § 481.134. If a day-care center does not serve more than twelve students or if a day-care center is not licensed, certified, or regulated, the day-care center does not create a drug-free zone. Thus, in order to prove a drug-free zone exists, the State must establish the day-care center at issue meets the statutory definition of "school."

The State notes Haagensen has not provided any cases which have reversed a drug-free-zone finding based on the definition of a school. The State further asserts it has been unable to find any cases in its own research. The State, though, has not provided this Court with any cases—and we have not discovered any in our own research—that hold the State is not required to prove a day-care center qualifies as a school under Tex. Hum. Res.Code Ann. § 42.002. Although it appears this may be an issue of first impression, the State must prove all the statutory elements of the enhancement.

We conclude the definition of a "day-care center" contained in Tex. Hum. Res. Code Ann. § 42.002 is an essential element of the enhancement. Thus, the definition of a "day-care center" must be included in the hypothetically-correct jury charge. The hypothetically-correct jury charge required the State to prove that (1) the offense charged (2) was committed (3) within 1,000 feet of any real property that is owned, rented, or leased to (4) a facility (5) that provides care (6) for more than twelve children and (7) is licensed, certified, or registered by the department.

---

4. The State argues, "The name of the premises alone may be sufficient to raise a presumption that it is a day-care center that was 'licensed, certified or registered by the Department.' *Accord Young*, 14 S.W.3d at 754." We believe *Young* is distinguishable from this case. In *Young*, the Texas Court of Criminal Appeals stated, "[T]he name of the premises alone may be sufficient to raise a presumption that it is a private or public elementary or secondary school." *Young*, 14 S.W.3d at 754 (noting State also introduced maps of drug-free zones). *Young* did not involve a day-care center. Under the Texas Health and Safety Code, all private and public elementary and secondary schools create drug-free zones. *See* Tex. Health & Safety Code Ann. § 481.134.

Haagensen argues the State failed to prove the Little Ark Learning Center is licensed, certified, or registered. Officer Foreman replied in the affirmative when asked, "As you understand the law, [the day-care center] is a school?" No objection was made to this testimony. Although Foreman's testimony is, perhaps, conclusory and is a mixed conclusion of fact and law, we conclude it is some evidence that could be considered by the jury and provides legally sufficient evidence of its existence as a statutorily-defined child-care facility. In addition to the testimony of Foreman, the State presented the testimony of Marie Rushing, the child-care director at Little Ark Learning Center. Rushing testified that Little Ark provides its services for more than twelve children under the age of fourteen for less than twenty-four hours per day. This description matches most of the statutory requirements to meet the definition of a child-care center; the only missing element is that there was no direct testimony that Little Ark was licensed, certified, or registered by the Texas Department of Human Services. Absent testimony to the contrary, we will not assume that the First United Methodist Church was illegally operating the child-care center and the failure to specifically identify it as being licensed, certified, or registered was not a sufficiently consequential lapse to invalidate its characterization as a child-care facility. We also determine that the jury could infer from the evidence provided by Rushing and Foreman that this was a child-care facility as defined in the statute. When reviewing the sufficiency of the evidence, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim.App.1999); *see Neal v. State*, 256 S.W.3d 264, 277 (Tex.Crim.App.2008). Further, Officer Foreman testified he based his measurements on a map he obtained at city hall from the city engineer.[5] We conclude, based on Foreman's testimony, that a rational person could have found that the day-care center was licensed, certified, or registered.

In the alternative, Haagensen argues the State failed to prove the offense occurred within 1,000 feet of the day-care center. Haagensen argues the record only establishes the offense occurred in the yard of some unidentified house on East Price Street. Foreman testified the transaction occurred in the yard of the house to the east of the third house on East Price Street. Foreman estimated the location was approximately 950 feet from the property line of the day-care center's parking lot and testified it was "well within" the 1,000–foot circle of the day-care center.[6] Officer Foreman testified he based his measurements from the parking lot of the day-care center. Haagensen argues this parking lot actually belongs to a neighboring church and is not leased to, owned, or rented by the day-care. Haagensen has

5. The map used by Foreman was not introduced into evidence. There is also no evidence the map has been approved by the municipality. *See* Tex. Health & Safety Code Ann. § 481.135 (Vernon 2010) (drug-free-zone map approved by municipality is prima facie evidence). We note that the Texas Court of Criminal Appeals has held a map may be "probative proof of the drug-free zone boundaries" even if there is no evidence the map has been approved. *Young,* 14 S.W.3d at 754.

6. Foreman testified he based his measurements on a map he obtained at city hall from the city engineer and by using Google Earth. We note that the Texas Health and Safety Code provides a map produced by a city engineer is admissible and prima facie evidence of drug-free zones if approved by the municipality. Tex. Health & Safety Code Ann. § 481.135. No objection was made concerning the admissibility of Foreman's testimony.

not directed this Court to where the record establishes the parking lot belongs to the neighboring church. Further, a rational juror could have concluded the parking lot belonged to the day-care center. Foreman testified "the parking area for Little Ark goes past the third house—the house just east of the house he was parked in front of." The jury could reasonably make the deduction that the parking lot was owned, rented, or leased to the day-care center. We note that Rushing testified she was "employed by First United Methodist Church, Little Ark Learning Center...." Thus, the jury could have alternatively deduced, from Rushing's testimony and Foreman's testimony, that the day-care center is owned by the neighboring church and the parking lot of the neighboring church is also the parking lot of the day-care center. We conclude a rational juror could have concluded, beyond a reasonable doubt, that the offense occurred in a drug-free zone. The evidence is sufficient.

**The Record Does Not Establish Haagensen Received Ineffective Assistance of Counsel**

■ Haagensen, in his third and fourth issues, claims he received ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments. *See* U.S. Const. amend. V, VI, XIV. Haagensen also argues he received ineffective assistance of counsel in violation of Article I, Sections 10 and 19 of the Texas Constitution.[7] *See* Tex. Const. art. I, §§ 10, 19. Haagensen argues he received ineffective assistance of counsel because his trial counsel failed to object to hearsay and irrelevant evidence used in obtaining the

search warrant and evidence of extraneous bad acts.

We evaluate the effectiveness of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). To prevail on his claim, Haagensen must show (1) his appointed trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for trial counsel's errors, the result would have been different. *See Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App.2001). An appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). "It is well-settled that any claim of ineffective assistance must be firmly founded in the record." *Flowers v. State*, 133 S.W.3d 853, 857 (Tex.App.-Beaumont 2004, no pet.); *see Thompson*, 9 S.W.3d at 813.

Haagensen argues his trial counsel was deficient because he failed to object to hearsay and evidence of extraneous bad acts and unadjudicated offenses. The State introduced evidence concerning evidence used to obtain the search warrant; evidence obtained as a result of the search warrant, including baggies, scales, syringes, pipes, and a spoon with white residue; testimony concerning Haagensen's prior arrests; and drug ledgers which listed names and numbers of persons whom a

---

7. Haagensen does not provide any separate argument or authority explaining how the protections offered by the Texas Constitution differ from the protections guaranteed by the United States Constitution. Likewise, Haagensen does not argue that the Texas Constitu-

tion sets out a different or higher standard than the federal Constitution. Consequently, we review his claims under the federal standard. *See Moore v. State*, 935 S.W.2d 124, 128 (Tex.Crim.App.1996).

police officer testified were associated with narcotics use and drug trafficking.

The question is whether failure to object to these alleged bad acts constitutes ineffective assistance of counsel. Extraneous offenses are inherently prejudicial, and when counsel fails to object to numerous extraneous and prejudicial matters, counsel may be ineffective. *Brown v. State*, 974 S.W.2d 289, 293 (Tex.App.-San Antonio 1998, pet. ref'd). An accused must be tried only for the offense charged; "[t]he accused may not be tried for a collateral crime or for being a criminal generally." *Jackson v. State*, 320 S.W.3d 873, 882 (Tex.App.-Texarkana 2010, pet. ref'd). While much of the evidence may have been admissible, some of the evidence was clearly not admissible.

We note that trial counsel may have elected not to object based on trial strategy. "The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance." *Mallett*, 65 S.W.3d at 63. Much, although not all, of the evidence complained of would have been within the trial court's discretion to admit. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim.App.1996) (appellant must demonstrate that if counsel had objected on indicated grounds, trial court would have erred in overruling objection). We note trial counsel's reasons do not appear in the record. Trial counsel's strategy in not objecting may have been an effort to build rapport with the jury and prevent the jury from concluding he was attempting to hide information from them. Counsel also may have not objected because an objection would have emphasized the evidence. "If counsel's reasons for his conduct do not appear in the record and there is at least

the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex.Crim.App.2002). Because trial counsel's failure to object may have been based on trial strategy, we are unable to conclude counsel's actions fell outside the wide range of reasonable professional assistance.

Further, even if trial counsel was deficient for failing to object, Haagensen has not met the second prong of *Strickland*. Haagensen argues he has demonstrated prejudice because "the jury was inundated with details concerning the process for obtaining a search warrant" and the jury was informed a judge had found sufficient evidence to conclude probable cause existed for the issuance of a search warrant. Haagensen argues this was "done under the guise of educating the jury" and "was used to lead the jury to the conclusion that the judge already knew Appellant was a known drug dealer and the judge already believed him to be guilty." Haagensen claims he was tried for being a criminal generally and the jury could have concluded the confidential informant lied.

We disagree there is a reasonable probability that a different result would have occurred. Even though there is a theoretical possibility the jury could have disbelieved the confidential informant, Haagensen has not demonstrated a reasonable possibility that the jury would have disbelieved the confidential informant.[8] The State introduced evidence that the confidential informant had been searched prior to the transaction, the confidential informant had methamphetamine in his posses-

---

8. We note the confidential informant admitted he was on community supervision at the time of the offense and had four convictions, including two felony convictions for burglary of a habitation.

sion after the transaction, methamphetamine was found in the car being driven by Haagensen, and the money provided to the confidential informant had been found in a jacket on which Haagensen had been sitting. The State also introduced an audio recording of the transaction. The record before us does not demonstrate that Haagensen's trial counsel rendered ineffective assistance.

**Any Error Concerning the Cause Number on the Verdict Form Is Not Preserved for Appellate Review**

In his fifth issue, Haagensen contends his conviction must be reversed because the jury's verdict form specified an incorrect cause number. This case is an appeal from cause number 23608 in the trial court. The indictment, court's charge, and judgment all specify cause number 23608. The jury's verdict form, though, specified cause number 22949.[9] Haagensen has not directed this Court to the place in the record where he objected in the trial court to the error.

As a general rule, in order to preserve a complaint for review on appeal, the claimed error must have been presented in the trial court, thereby providing the trial court the opportunity to correct any error during the course of the trial. *See* TEX. R.APP. P. 33.1(a). The Texas Court of Criminal Appeals has held "our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App.1993), *modified in part*

by *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997); *see Saldano v. State*, 70 S.W.3d 873, 887–88 (Tex.Crim.App. 2002).

Haagensen has not presented any argument or authority that the error complained of is absolute error or waivable only error. The Beaumont Court of Appeals has held the error complained of—an incorrect cause number—can be forfeited if not objected to. *See Metcalfe v. State*, No. 09–08–00256–CR, 2009 WL 2617644, at 2, 2009 Tex.App. LEXIS 6720, at *4–5 (Tex.App.-Beaumont Aug. 26, 2009, pet. ref'd) (mem. op., not designated for publication) (failure to object to incorrect cause number forfeited error).[10] We agree with the Beaumont court. By failing to object to the error in the trial court, any error has been forfeited. Nothing is preserved for appellate review. We overrule Haagensen's fifth point of error.

**Conclusion**

The evidence is sufficient to support the jury's finding that the offense occurred in a drug-free zone. We conclude the record does not establish that Haagensen received ineffective assistance of counsel. Any error in the cause number contained in the verdict form has not been preserved for appellate review. We affirm.

Dissenting Opinion by Justice CARTER.

JACK CARTER, Justice, dissenting.

The Legislature has determined that the penalty for some drug-related offenses are enhanced if the offense occurs in a "drug-free zone." TEX. HEALTH & SAFETY CODE ANN. § 481.134 (Vernon 2010). To deter-

---

**9.** Haagensen alleges on appeal that this cause number concerned another charge pending against him.

**10.** Although the unpublished case has no precedential value, we may take guidance

from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex.App.-Amarillo 2003, pet. ref'd).

mine the location of a "drug-free zone," it is necessary to examine the specific definitions of the terms as provided by the Legislature. One category involves offenses that occur near institutions of higher learning, public or private youth centers, playgrounds or public swimming pools, and video arcade facilities. TEX. HEALTH & SAFETY CODE ANN. § 481.134(b)(1)-(2). These violations increase the punishment range for state jail felony offenses, making them punishable as third degree felonies. Another category involves higher level felonies which occur within 1,000 feet of a school or public or private playground or on a school bus. The penalty for those offenses is enhanced by increasing the minimum punishment by five years and by doubling the maximum fine. TEX. HEALTH & SAFETY CODE ANN. § 481.134(c). The statute provides specific definitions of "Institution of higher learning," "Playground," "Video arcade facility," and "Youth center." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(2)-(3), (6)-(7).

The category that the State alleged applied to this case is found in Section 481.134(d). In those instances, state jail felony offenses are punishable as third degree felonies if the offense occurs: (1) in, on, or within 1,000 feet of any real property that is owned, rented, or leased to a school. "School" is defined in the same statute: (5) "School" means a "private or public elementary or secondary school or a day-care center, as defined by Section 42.002, Human Resources Code." TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(5). The indictment alleged the offense occurred "within 1000 feet of a school, to-wit: Little Ark Preschool, Paris, Lamar County, Texas." The State made no attempt to prove that Little Ark Learning Center was a private or public elementary or secondary school and relied entirely on the alternative definition of "School" as including a day-care center.

Stated plainly, the State did not prove Little Ark Learning Center met all the requirements for a day-care center. A "'Day-care center' means a child-care facility...." TEX. HUM. RES.CODE ANN. § 42.002(7) (Vernon Supp. 2010). In turn, a "'Child-care facility' means a facility licensed, certified, or registered by the department...." TEX. HUM. RES.CODE ANN. § 42.002(3). There was no proof that this facility was licensed, certified, or registered.

I will be the first to acknowledge that the requirements for this proof are detailed and particularized. *See Jones v. State*, 300 S.W.3d 93, 99 (Tex.App.-Texarkana 2009, no pet.) (jury finding drug offense occurred within 1,000 feet of playground, as defined by law, did not constitute determination offense occurred within drug-free zone under statute applicable at relevant time). For whatever reason, the Legislature only intended to include day-care facilities licensed by the State agency charged with overseeing the centers. But these specific definitions and restrictions were mandated by the Legislature, and we cannot discard the necessity for that requisite proof. The majority opinion finds that most of the evidence needed was provided (Little Ark Learning Center served more than twelve children under age fourteen for less than twenty-four hours a day) and approves the failure to produce evidence that the facility was licensed with the observation that it is unlikely the church would operate without a license. It very well may be true that the day-care center is properly licensed, but we have no evidence of that and we cannot substitute our suppositions and speculation for evidence. Further, the majority opinion shifts the burden of proof by stating, "Absent testimony to the contrary, we will not assume that the First United Methodist Church was illegally operating

the child care center...." The implication is that Haagensen must produce evidence that the center is not licensed; otherwise, the Court presumes it is.

I agree with the majority opinion that the State is required to prove the center was licensed, certified, or registered; since no such evidence is in the record, the State has failed to meet its burden of proof.

I respectfully dissent.