MODIFY and AFFIRM; Opinion issued January 17, 2013.



In The

# Court of Appeals

# Fifth District of Texas at Dallas

No. 05-11-01290-CR
No. 05-11-01291-CR

## PHILLIP ROGERS PROCELLA, Appellant

V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court
Dallas County, Texas
Trial Court Cause Nos. F10-51420-P & F10-54196-P

## OPINION

Before Justices Murphy and Richter[1]
Opinion By Justice Murphy

Phillip Rogers Procella pleaded not guilty to one count of possession with the intent to deliver between four and 200 grams of cocaine with a deadly weapon in a drug-free zone and one count of aggravated assault against a public servant with a deadly weapon. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010); *id.* § 481.134(c) (West Supp. 2012); TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(B) (West 2011). After the jury returned a guilty verdict on both counts, the trial court sentenced Procella to two concurrent terms of forty years in prison. In two

---

[1] The Honorable Martin E. Richter, Retired Justice, sitting by assignment. The Honorable Joseph Morris was on the panel and participated at the submission of this case. Due to his retirement from this Court on December 31, 2012, he did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 41.1(a), (b).

points of error, Procella contends the trial court abused its discretion by allowing one of the State's witnesses to testify as an expert witness and by admitting photographs showing another person's tattoos during the punishment phase of trial. In two additional points of error, Procella asserts the judgment in each case should be modified to reflect that the trial court assessed his punishment. We modify the trial court's judgments as requested and affirm the judgments as modified.

## I. Admission of Expert Witness Testimony

Procella's first point of error relates only to the drug possession case (No. 05-11-01290-CR). Procella complains the trial court erred by admitting the testimony of Joel Wasinger because he was not qualified to testify as an expert about whether the offense occurred within a drug-free zone. We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). As with other types of evidentiary rulings, we will uphold the trial court's decision as long as it lies within the zone of reasonable disagreement. *Tillman*, 354 S.W.3d at 435.

### A. Background

As charged in the indictment, the State was required to prove Procella committed the possession offense within a drug-free zone—that is, within "1,000 feet of any real property that is owned, rented or leased to a school," specifically James Bowie Elementary School. Proof of the drug-free zone allegation triggers application of health and safety code subsection 481.134(c), which increases the minimum punishment for the offense by five years and doubles the maximum fine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(c). Subsection 481.134(c) does not create a separate offense; its only effect is to raise the penalty when an enumerated offense is committed in a designated place. *See Williams v. State*, 127 S.W.3d 442, 445 (Tex. App.—Dallas 2004, pet. ref'd).

–2–

As part of its proof that the offense took place within a drug-free zone, the State offered exhibit 49A, a "map of the area," which was admitted through another witness without objection. The exhibit was an aerial photograph showing the location of the offense at 611 N. Marsalis Avenue outlined in yellow, the location of "Bowie Elementary School" at 330 N. Marsalis Avenue outlined in green, and a red perimeter line drawn out from the school premises; the location of the offense was depicted on the exhibit as within the perimeter. The map included a scale, showing that a one-inch measurement was the equivalent of a distance of 100 feet.

The State also presented the testimony of Wasinger, the geographic information systems coordinator for Dallas County Public Works. At a hearing held outside the presence of the jury, Wasinger testified his job involves making maps, analyzing geographic data, and managing geographic-related databases. He stated he did not prepare the drug-free zone map for this case, but he explained how such maps are created using data from the county appraisal district and mapping software. Procella objected to Wasinger's proposed testimony, arguing Wasinger should not be allowed to give opinion testimony because there was no showing of "sufficient background, training, [or] preparation for this witness to be held as an expert." He also argued that Wasinger should not be allowed to testify because "we do not have before us the people that set this up, put in play and prepared for court." The trial court overruled the objection and allowed Wasinger's testimony to be presented to the jury.

During his testimony, Wasinger referred to exhibit 49A and testified that the red perimeter line on the exhibit represented a thousand-foot boundary. He explained that the perimeter was "a product of taking the parcel in the middle, the elementary school, and telling the [mapping] software we want to go a thousand feet in all directions around it and [the software] draws a line." Wasinger then simply testified that anything inside the boundary line was within 1,000 feet of any property

–3–

owned by that school. The jury found by special issue that Procella committed the drug offense within 1,000 feet of a school.

## B. Analysis

In ruling on the admissibility of expert testimony, a trial court must determine that (1) the expert is qualified as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will assist the fact-finder in deciding the case. *See* TEX. R. EVID. 702; *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). These conditions are commonly referred to as qualification, reliability, and relevance. *Vela*, 209 S.W.3d at 131. The conditions raise distinct questions and issues, and an objection based on one of the conditions does not preserve error as to another. *See id.* (stating qualifications of expert witness are "distinct from reliability and relevance and, therefore, should be evaluated independently"); *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Turner v. State*, 252 S.W.3d 571, 584 n.5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (objection based on expert's qualifications did not preserve reliability issue).

Procella argues on appeal that the trial court abused its discretion by allowing Wasinger to testify as an expert about the drug-free zone because the trial court failed to conduct a proper inquiry into whether Wasinger had the necessary qualifications. He also raises an additional argument about the reliability of Wasinger's expert opinion, arguing there was no testimony to establish that the data behind the drug-free zone map was accurate. But the reliability of Wasinger's opinion based on "the data behind the map" was not raised to the trial court; rather Procella's objection covered qualification only. Procella's reliability complaint therefore was not preserved for our review. *See* TEX. R. APP. P. 33.1(a); *Vela*, 209 S.W.3d at 131; *Turner*, 252 S.W.3d at 584 n.5.

—4—

Regarding his complaint about Wasinger's qualifications, Procella asserts "there was very little inquiry into his background and training" or that Wasinger's "background was central to the drug-free zone map evidence." The State responds that the trial court properly exercised its discretion because Wasinger adequately explained his specialized experience with maps and mapmaking of this type. The State also asserts that because "GIS measuring techniques are known to the courts to be widely used and are generally considered sufficiently reliable in foundation," it is "questionable whether Wasinger was required to testify as an expert." Although the State cites no Texas case for this proposition, we will assume expert testimony was required to assist the jury in understanding the drug-free zone map. Our opinion, however, should not be construed as a determination on the merits of whether expert testimony is required to show an offense occurred within a drug-free zone. *See, e.g.*, TEX. HEALTH & SAFETY CODE ANN. § 481.135(d)(1), (2) (State may rely "on any other evidence or testimony to establish any element of an offense for which punishment is increased under Section 481.134," including using or introducing a map or diagram admissible under the rules of evidence); *Young v. State*, 14 S.W.3d 748, 754 (Tex. Crim. App. 2000) (concluding maps produced by city planning department and officer testimony was sufficient for jury to find offenses occurred within zone; maps were "probative proof" of drug-free zone boundaries); *Perez v. State*, 332 S.W.3d 700, 703–04 (Tex. App.—Amarillo 2011, pet. ref'd) (satellite photo depicting area and testimony of engineer and officers that offense took place within drug-free zone); *Haagensen v. State*, 346 S.W.3d 758, 764–65 (Tex. App.—Texarkana 2011, no pet.) (officer testimony that drug transaction occurred within zone based on map obtained from city hall and by using Google Earth).

Under rule 702, a person may be qualified to testify as an expert "by knowledge, skill, experience, training, or education." TEX. R. EVID. 702. The qualification inquiry involves two parts:

whether the witness has a sufficient background in a particular field and whether that background goes to the very matter on which he will give an opinion. *Vela*, 209 S.W.3d at 131. "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers*, 205 S.W.3d at 527–28. The focus is on the "fit" between the subject matter at issue and the expert's familiarity with it. *Vela*, 209 S.W.3d at 133.

Wasinger testified regarding his background that he has been in the GIS industry for twenty years and has spent most of those twenty years analyzing geographic data. He began his career working for a software company that manufactured a GIS application. He also has taken independent courses in GIS and computer science. Wasinger testified he has made several drug-free zone maps like exhibit 49A, stating "[i]t's something that any of us can do." He also described the map-making process, explaining that a drug-free zone map is created on a computer by overlaying Cartesian planes of latitude and longitude and using plot lines maintained by the county appraisal district. He described it as a "simple process." He explained that either he or one of the other GIS technicians takes the two locations in question. With the school as the center point, and using the mapping software, a thousand-foot perimeter is drawn around the lines for that piece of property. The location of the crime then is indicated on the map to see if it lies within the thousand-foot perimeter. Regarding his specific opinion in this case, Wasinger testified that the distance from the school grounds to the location of the offense "was less than a thousand feet."

Wasinger's familiarity with the mapping software and how drug-free zone maps are created using the software put context to exhibit 49A. Based on his review of the map, he testified the offense occurred within the drug-free zone. We conclude the trial court acted within the zone of reasonable disagreement in determining that Wasinger's training, education, and experience

regarding mapmaking and analyzing GIS data qualified him to offer the opinion that Procella committed the drug offense within the drug-free zone. Although Procella, on appeal, criticizes the accuracy of the underlying data from which the map was produced, this is not a valid objection to Wasinger's qualifications. Importantly, Procella did not object to the admission of the map at trial. Accordingly, we overrule Procella's first point of error.

## II. Admission of Photographs

Procella argues in his second point of error, which relates to both cases, that the trial court abused its discretion when it admitted three exhibits during the punishment phase of trial. The challenged exhibits are State's exhibits 76, 77, and 78, which are photographs of gang-related tattoos on another person, Keithian Brown, who was found with Procella at the scene of the offenses and also arrested.

The photographs of Brown's tattoos were taken during his interview with a police detective shortly after he was arrested. Exhibit 76 showed a tattoo on Brown's back depicting the words "Rolling 60s"; exhibit 77 showed a second tattoo on what appears to be Brown's arm with the initials "RSC" presented in Old English script; exhibit 78 is too dark to discern a particular tattoo, and there was no specific testimony describing that tattoo. Detective Barrett Nelson, who had spent fourteen years working with the gang unit of the Dallas Police Department, testified that the tattoos shown in the photographs represented a criminal street gang called the "Rolling 60 Crips" based in the southern Oak Cliff area of Dallas. Procella objected, based on relevance, to the admission of the photographs and to any testimony about Brown. The trial court overruled Procella's objections and stated that it would "only consider the relevant portions of the photographs" and not consider the testimony if it was "not linked to Mr. Procella in any way."

Procella argues on appeal that photographs of Brown's tattoos have no bearing on his cases

and the State was attempting to prove he "was a gang member through the pictures of gang tattoos on another person." He further claims that his forty-year sentence indicates he was "ultimately punished for Brown's bad character."

We need not decide, however, whether admission of the photographs of Brown's tattoos during the punishment phase was error. Even assuming any error occurred, we conclude such error did not affect Procella's substantial rights and would have provided nothing more than a slight influence on the trial court's punishment determination, if any influence at all. *See* TEX. R. APP. P. 44.2(b) (providing we must disregard any "error, defect, irregularity, or variance that does not affect substantial rights"). The record before us shows that Procella's membership in a gang, and specifically, the Rolling 60 Crips, was not proven through the pictures of Brown's gang tattoos. Rather, testimony was admitted without objection to Procella's own affiliation with the Rolling 60 Crips. Nelson explained during his testimony the various criteria, including self-admission and tattoos, police use to determine whether someone is a member of a gang. Nelson testified that tattoos found on members of the "Rolling 60s" are "very prevalent." When asked to look at the tattoo of a "60" on the side of Procella's head, Nelson identified that tattoo as being "very consistent" with the Rolling 60 Crips. He added, "[y]ou're not gonna put a '60' on the side of your head unless you're promoting a gang. . . . To see that, that's self-admission itself." Procella got that tattoo while in jail after being arrested for these offenses. Nelson also testified about the gang's criminal activities, which include narcotics, aggravated assault, murders, and car thefts, and provided general testimony about gang affiliation and the relationship between gang affiliation and drug dealing; he testified "[t]hat's how gangs survive; they sell narcotics and rob people." Contrary to Procella's assertions that "the State focused almost solely on Brown's gang tattoos," Nelson's testimony was not specific to Brown's acts or character or otherwise linked to Brown.

Procella did not object to Nelson's testimony related to the "60" tattoo on his head or Nelson's identification of that tattoo as being consistent with membership in the Rolling 60 Crips. In closing, Procella's counsel agreed that the "[g]ang membership is not good." Nor did Procella object to Nelson's general testimony related to the criminal activities of the Rolling 60 Crips or the importance of gang life to drug dealing. Under article 37.07 of the Texas Code of Criminal Procedure, a trial court has broad discretion to admit evidence the court deems relevant to sentencing, including evidence of prior crimes, reputation, character, or the circumstance of the offense. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (West Supp. 2012); *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009). Evidence of membership in or affiliation with a gang, such as the Rolling 60 Crips, would fall under the type of "bad acts" relevant to sentencing, and article 37.07 allows the introduction of such evidence to show the defendant's character. *See Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *Sierra v. State*, 266 S.W.3d 72, 79 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *see also Ho v. State*, 171 S.W.3d 295, 305 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("Even if appellant was no longer affiliated with the gang at the time of the shooting, evidence that he was a gang member is relevant—and thus admissible at punishment—because it relates to his character.").

The trial court had before it evidence of Procella's own gang membership and evidence of that gang's character and reputation, as well as other testimony, upon which to base its punishment determination. *See Davis v. State*, 329 S.W.3d 798, 805 (Tex. Crim. App. 2010); *Beasley*, 902 S.W.2d at 456–57 ("evidence concerning appellant's gang membership is relevant because it relates to his character" and noting that it is not necessary to link the accused to the bad acts generally engaged in by gang members). Thus, even if it was error to admit the photographs showing tattoos on another person, we conclude that error did not have a substantial effect or otherwise influence the

trial court's decision about the appropriate punishment for Procella. We overrule Procella's second point of error.

## III. Modification of the Judgments

In his two remaining points of error, Procella asks this Court to modify the trial court's written judgments to reflect that the trial court, not the jury, assessed Procella's punishment in each case. The State agrees the judgments should be modified in the manner Procella requests. The judgment in each case incorrectly recites that Procella's punishment was assessed by the "Jury." The clerk's record for each case, however, contains an election of punishment, in which Procella requests that the judge assess his punishment in the event the jury finds him guilty. In addition, the reporter's record shows that the trial court asked Procella if he understood that he elected to have the judge set punishment rather than the jury; Procella indicated he understood his election.

This Court has the power to correct a clerical error on a judgment to reflect what occurred in the trial court as shown by the record. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). We therefore sustain Procella's third and fourth points of error and modify the judgment in each case to reflect that Procella's punishment was assessed by the trial court.

We affirm the trial court's judgments as modified.

_____
MARY MURPHY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

111290F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PHILLIP ROGERS PROCELLA, Appellant

No. 05-11-01290-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the 203rd Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
F10-51420-P).
Opinion delivered by Justice Murphy,
Justice Richter participating.

Based on the Court's opinion of this date, the trial court's judgment is **MODIFIED** as follows:

The "Punishment Assessed by" is modified to read: "Court."

As modified, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 17, 2013.

_____
MARY MURPHY
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

PHILLIP ROGERS PROCELLA, Appellant

No. 05-11-01291-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the 203rd Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
F10-54196-P).
Opinion delivered by Justice Murphy,
Justice Richter participating.

Based on the Court's opinion of this date, the trial court's judgment is **MODIFIED** as follows:

The "Punishment Assessed by" is modified to read: "Court."

As modified, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 17, 2013.

_____
MARY MURPHY
JUSTICE