

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00162-CR

_____

JASON WASHINGTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th District Court
Smith County, Texas
Trial Court No. 114-0773-12

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Jason Washington was convicted by a jury of delivery of cocaine in an amount less than one gram in a drug-free zone. After pleading true to an enhancement paragraph, Washington was sentenced to twenty years' imprisonment and assessed $654.00 in court costs. On appeal,[1] Washington argues that (1) the trial court erred in denying Washington's motion for directed verdict because the evidence was legally insufficient to show that the offense was committed in a drug-free zone, (2) the trial court erred in denying a motion for mistrial "following a statement from a venire member that she knew Mr. Washington from the jail," and (3) the trial court's imposition of court costs was not supported by the record. We find that the evidence was legally sufficient to show delivery of cocaine in a drug-free zone and that Washington's alleged grounds for a mistrial are not supported by the record. While we find that the supplemental clerk's record supports the assessment of court costs, we find that the inclusion of attorney's fees within that assessment was not supported by evidence that Washington had the ability to pay attorney's fees. Therefore, we modify the trial court's judgment to delete the amount of attorney's fees from the assessed court costs. We affirm the judgment, as modified.

## I. Legally Sufficient Evidence Supported the Jury's Finding that the Offense Occurred in a Drug-Free Zone

The standard of review applicable to a motion for directed verdict is the same used under a legal sufficiency review. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997);

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

*Havard v. State*, 800 S.W.2d 195, 199 (Tex. Crim. App. 1989). In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of delivery of a controlled substance in a drug-free zone in an amount less than one gram beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We give deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits a state jail felony offense if he knowingly delivers less than one gram of cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (b) (West 2010). Section 481.134 of the Texas Health and Safety Code, titled "Drug-Free Zones," provides that if an offense otherwise punishable as a state jail felony under Section 481.112(b) is shown at trial to have been committed "in, on, or within 1,000 feet of any real property that is owned, rented, or leased

3

to a school or school board," the offense becomes a third degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.134(d)(1) (West Supp. 2012). Pursuant to his plea of true to the State's enhancement paragraph, Washington was "punished for a felony of the second degree." TEX. PENAL CODE ANN. § 12.42(a) (West Supp. 2012).

The indictment alleged that Washington delivered less than one gram of cocaine to Kimberly Kindle "within 1,000 feet of real property that was owned and rented and leased to a school, to-wit: Ebenezer Daycare, 1101 W. Queen, Tyler, Smith County, Texas." Washington argues that "[t]he State failed in its proof that the location was a drug-free zone pursuant to the Texas Human Resources Code."[2] The term "school," as used in Section 481.134(d)(1), includes "a day-care center, as defined by Section 42.002, Human Resources Code." TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(5). "'Day-care center' means a child-care facility that provides care at a location other than the residence of the director, owner, or operator of the child-care facility for seven or more children under 14 years of age for less than 24 hours a day, but at least two hours a day, three or more days a week." TEX. HUM. RES. CODE ANN. § 42.002(7) (West 2013). "[N]ot all day-care centers create drug-free zones." *Haagensen v. State*, 346 S.W.3d 758, 763 (Tex. App.—Texarkana 2011, no pet.) (holding that definition of day-care center is essential element of enhancement which must be included in hypothetically correct jury charge). "Thus, in order to prove a drug-free zone exists, the State must establish the day-care center at issue meets the statutory definition of 'school.'" *Id.*

---

[2]Washington's brief does not contest the jury's finding that he delivered less than one gram of cocaine.

4

Sargent Brian Bulman testified that Ebenezer Day Care was "directly behind" a home located at 1209 North Ross Street where the controlled buy of the cocaine was made by confidential informant Kindle. The State admitted a Smith County map of the area. Based on the map and its legend, Bulman testified that the day-care center was 1,000 feet from the home. Detective Lucas Neubauer testified that the day-care center "shares two border sides with the property in question, 1209 North Ross." He testifed, "I could stand with one foot in the yard of the crack house and one foot in the yard of the playground." This testimony established that the offense occurred within "1,000 feet of real property" owned, rented, or leased by the day-care center.

At the time of her testimony, Dorothy Brown, the "acting director" of Ebenezer Day Care, had worked at the day-care center for fifteen days. Brown testified that the facility, which was "attached to the church," took "care of small children," that the school had fifty children enrolled, and that it was open from 6:00 a.m. until 5:30 p.m. on weekdays.[3] After being recalled to testify, Brown stated that the licensed day-care center had operated for the past forty-five years and that it was open five days a week for the entire year of 2011. Washington argues there is no evidence that the day-care center operated as such on July 21, 2011, and Brown conceded she did not work at the center on that date. This evidence was subject to the jury argument Washington now makes, but when the evidence is conflicting or contradictory, the jury resolves

_____

[3]After this testimony, counsel moved for a directed verdict stating, "There's been absolutely no testimony at all that on July 21st, 2011, Ebenezer Day Care was operating as a daycare on that date." In fact, Brown's testimony, along with the video recording of the controlled buy, in which the sounds of children playing were heard, established that the facility was open and that children were present during the commission of the offense.

the conflict. On several occasions, Brown testified that the facility she now directs operated as a day-care center during all of 2011. From this evidence, the jury could find that the day-care center was operated on July 21, 2011, "for seven or more children under 14 years of age for less than 24 hours a day, but at least two hours a day, three or more days a week," meeting the statutory definition of a day-care center. TEX. HUM. RES. CODE ANN. § 42.002(7). The video recording of the controlled buy demonstrated that the offense occurred on Thursday, July 21, 2011, at approximately 2:45 p.m., during the day-care's normal business hours. Children were heard playing on the recording.

Brown also testified that Ebenezer Church was the owner of the building which comprised the day-care center. This was sufficient to establish that the property was "owned, rented, or leased to a school or school board." *See Haagensen*, 346 S.W.3d at 765 (finding that rational jury could conclude that offense occurred in drug-free zone where there was testimony "that the day-care center is owned by the neighboring church and the parking lot of the neighboring church is also the parking lot of the day-care center.").

We conclude that the testimony, along with the video recording of the controlled buy demonstrating that children were present, is some evidence that could be considered by the jury and provides legally sufficient evidence of Ebenezer Day Care's existence as a statutorily defined day-care center. We overrule Washington's first point of error.

## II. Grounds for a Mistrial Are Not Supported by the Record

The following transcript includes a discussion occurring during voir dire which Washington suggests is the basis for a mistrial:

> MS. THARPE: . . . . Does anybody know Mr. Ratekin? He's the Defense attorney in this case.
> Yes, ma'am Juror No. 28.
>
> VENIREPERSON: From the jail.
>
> MS. THARPE: . . . . You know Mr. Ratekin. You worked at the jail?
>
> VENIREPERSON: Yes, ma'am.
>
> MS. THARPE: Are you a jailer there?
>
> VENIREPERSON: Yes, ma'am.
>
> MS. THARPE: Do you see Mr. Ratekin --
>
> MR. RATEKIN: May we approach, please?
>
> (At the bench, on the record.)
>
> MR. RATEKIN: I've got more concern than that, Your Honor. She identified me from knowing me from the jail as knowing the defendant and possibly --
>
> THE COURT: She didn't say anything about knowing the defendant.
>
> MR. RATEKIN: "I also know the defendant."
>
> THE COURT: All right.
>
> MS. THARPE: I'll just tell her we're going to bring her up.
>
> MR. RATEKIN: I move for a mistrial on the fact that the jury panel could have a bias against my client, since he has been in jail or is currently in jail, which

7

would affect it. My understanding of what she said was "I know him from the jail" as I know the defendant.

> THE COURT: I believe she said -- none of this is going to be on the record. The court reporter couldn't hear it, and I couldn't hear it.

> MR. RATEKIN: But Ms. Tharpe heard it. Okay. You've denied my request.

> THE COURT: I am denying your request for mistrial.

The jury panel was excused while the trial court questioned juror number 28 individually. During individual voir dire of juror number 28, she stated that she knew Washington because, "I'm located at Central Jail, and he's at Central."

From this record, Washington suggests that although the court reporter and the trial judge did not hear juror number 28 say that she knew the defendant, "the prosecutor did hear it, or at least did not contradict defense counsel's assertion that she did hear the comment." There is no proof on the record that juror number 28 stated in front of the jury panel that she knew Washington from the jail. "Appellate courts must base their decisions on the record as made and brought forward, not on a record that should have been made or that could have been made." *In re Estate of Washington*, 262 S.W.3d 903, 906 (Tex. App.—Texarkana 2008, no pet.) (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 411 (Tex. 1998)); *see Kaman v. State*, 923 S.W.2d 129, 132 (Tex. App.—Houston [1st Dist.] 1996, no pet.). We overrule Washington's second point of error because the ground advanced is not supported by the record.

**III. The Record Supports the Modified Assessment of Court Costs**

"A clerk of a court is required to keep a fee record, and a statement of an item therein is prima facie evidence of the correctness of the statement." *Owen v. State*, 352 S.W.3d 542, 548 (Tex. App.—Amarillo 2011, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 103.009(a), (c) (West 2006)). "A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006). "In other words, a certified bill of costs imposes an obligation upon a criminal defendant to pay court costs, irrespective of whether or not that bill is incorporated by reference into the written judgment." *Owen*, 352 S.W.3d at 548. Absent a certified bill of costs, the record is insufficient to support the order of court costs, and there is no obligation to pay it.

At the sentencing hearing, the trial court stated, "Court costs are ordered paid by you." The written judgment, signed on September 13, 2012, listed court costs in the amount of $654.00. The original clerk's record filed with this Court did not contain a bill of costs. However, a bill of costs was prepared by the district clerk and was delivered by supplemental record pursuant to the State's request. The signed[4] bill of costs listed the total amount of court costs as $654.00, which included $300.00 in attorney's fees. Washington complains that because the record, as it existed "prior to or contemporaneously with the judgment" did not contain a bill

---

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006).

9

of costs, the evidence is legally insufficient to support the assessment of court costs.[5] We have previously rejected this argument. *See Cardenas v. State*, No. 01-11-01123-CR, 2013 WL 1164365, at \*4–5 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.) (finding supplementation of record to include bill of costs pursuant to appellate court order authorized by TEX. CODE CRIM. PROC. ANN. art. 103.006 and TEX. R. APP. P. 34.5 and 44.3);[6] *Jones v. State*, No. 06-12-00107-CR, 2013 WL 1119123, at \*4 (Tex. App.—Texarkana Mar. 19, 2013, no pet.) (mem. op., not designated for publication) (providing for supplementation of the record with a bill of costs).[7]

However, Washington also challenges the trial court's inclusion of $300.00 in attorney's fees. This claim of insufficient evidence to support court costs is reviewable on direct appeal. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); *Johnson*, 389 S.W.3d at 516. After the trial court found him to be indigent, counsel was appointed to represent Washington at

---

[5]Washington suggests that *Johnson v. State*, 389 S.W.3d 513 (Tex. App.—Houston [14th Dist.] 2012, pet. granted), prohibits this Court's consideration of the supplemental clerk's record. In *Johnson*, the district clerk filed an affidavit with the Fourteenth Court of Appeals swearing that the record did not contain a bill of costs. After oral argument, the clerk supplemented the record with a computer screen printout from the Harris County Justice Information Management System showing court costs in the appellant's case. She did not retract her earlier affidavit swearing that there was no bill of costs. The computer printout was not a signed bill of costs as required by statute. TEX. CODE CRIM. PROC. ANN. art. 103.001. In this case, the district clerk complied with this Court's order by producing a bill of costs meeting the requirements of Article 103.001.

[6]Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[7]Washington also cites to our opinions in *Tafolla v. State*, No. 06-12-00122-CR, 2012 WL 6632767 (Tex. App.—Texarkana Dec. 20, 2012, no pet.) (mem. op, not designated for publication), and *Cuba v. State*, No. 06-12-00106-CR, 2012 WL 6152965 (Tex. App.—Texarkana Dec., 11, 2012, no pet.) (mem. op., not designated for publication). In those cases, the entire record failed to support the assessment of court costs because no supplemental record attaching a bill of costs was filed.

trial and on appeal.[8]  "Fees for court-appointed representation are often included in a bill of costs." *Armstrong v. State*, 340 S.W.3d 759, 765 (Tex. Crim. App. 2011).  Under Texas Code of Criminal Procedure Article 26.05(g), a trial court has the authority to order the reimbursement of court-appointed attorney's fees.  This article states:

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay.

TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2012).  "'[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees.'"  *Id.* at 765–66 (quoting *Mayer*, 309 S.W.3d at 556).  Here, the State concedes that the record before us does not contain any determination or finding by the trial court that Washington had any financial resources or was "able to pay" the appointed attorney's fees.  Thus, the assessment of the $300.00 in attorney's fees was erroneous and should be redacted.  *See generally Mayer*, 309 S.W.3d 552; *Rodriguez v. State*, No. 06-12-00167-CR, 2013 WL 375408, at *1 (Tex. App.—Texarkana Jan. 31, 2013, no pet.) (mem. op., not designated for publication); *Proctor v. State*, No. 12-11-00335-CR, 2012 WL 3804371, at *2 (Tex. App.—Tyler Aug. 31, 2012, pet. ref'd) (mem. op., not designated for

---

[8]"We also observe that [A]rticle 26.04(p), provides that '[a] defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs.'" *Mayer*, 309 S.W.3d at 557 (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2012)).

publication) (relied on supplemental record containing signed bill of costs to redact attorney's fees from total amount of costs imposed absent record indicating defendant was able to pay).

Accordingly, modification of the trial court's judgment is in order.

## IV.    Conclusion

We modify the trial court's judgment to delete the $300.00 assessment of attorney's fees, leaving $354.00 as the total amount of court costs to be imposed.  As modified, we affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:    May 7, 2013
Date Decided:    May 8, 2013

Do Not Publish