

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

───────────────────────

No. 02-21-00147-CR
No. 02-21-00148-CR

───────────────────────

JOSE VENANCIO, Appellant

V.

THE STATE OF TEXAS

───────────────────────────────────────────

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court Nos. F19-580-367, F21-2369-462

───────────────────────────────────────────

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Jose Venancio appeals his convictions for continuous sexual abuse of a child and indecency with a child.[1] On appeal, Venancio raises three issues. First, he argues that the trial court erred by allowing Officer Carlos Flores to testify as an outcry witness because he was not the first adult to whom the victim disclosed the abuse. Second, Venancio contends that the trial court erred by denying his request for a continuance to procure a witness for trial. Finally, Venancio asserts that he received ineffective assistance of counsel. We will affirm.

## I. Background

In December 2018, thirteen-year-old KE[2] told her school counselor Laurie Melendez that she had been raped by Venancio. Melendez arranged a meeting with KE's mom and a Spanish translator so that KE could further discuss what had happened. At the meeting, KE was crying so much that she could not speak.

---

[1]Venancio was charged with the continuous sexual assault of two separate victims, KE and JE. The trial court established separate case numbers for the charges involving each of the two victims: Case No. F19-580-367 for KE and Case No. F21-2369-462 for JE. The cases were consolidated and tried together. Venancio was convicted of continuous sexual abuse of a child in KE's case but was only convicted of the lesser included offense of indecency with a child in JE's case. Venancio has filed separate appeals in each case. Because the issues are identical, we address both appeals in this opinion.

[2]We refer to the victims and their family members—other than the Appellant—by their initials. *See* Tex. R. App. P. 9.10(a)(3).

Eventually, school resource officer Carlos Flores was called to the scene and spoke with KE about the allegations. During the meeting with Flores, KE disclosed specific acts of sexual abuse in which Venancio removed her clothing and penetrated her vagina with his fingers and penis at a family gathering. Flores referred the case to the Lewisville Police Department for investigation.

As part of the investigation, KE was interviewed by Stephanie Juarez Killion at the Children's Advocacy Center (CAC). During this interview, KE disclosed that Venancio had committed additional acts of sexual abuse against her and that these acts had begun when KE was in the fourth or fifth grade. KE provided graphic detail and demonstrated the abuse during the interview.

Bryan Gibbins, now a former detective, was assigned to the case, conducted the primary investigation, and procured an arrest warrant for Venancio. However, by the time the case was brought to trial, Gibbins had begun serving a fifty-year sentence for multiple counts of sexual assault of a child and possession of child pornography. The trial court granted the State's motion in limine regarding Gibbins's charges, and the State did not list Gibbins as a potential trial witness.

During trial preparations, KE's older sister JE informed the District Attorney's Office that she had also been sexually abused by Venancio when she was under the age of fourteen. Lewisville Police Detective Chris Loughry was assigned to investigate JE's case. Officer Loughry's investigation revealed that Venancio had abused JE as well, and Venancio was subsequently indicted for continuous sexual abuse of JE. This

second case involving JE was consolidated with Venancio's prior case concerning KE, and both cases were tried together.

Following a jury trial, Venancio was found guilty of continuous sexual abuse of KE and, in JE's case, of the lesser included offense of indecency by contact. Venancio was sentenced to life in prison in KE's case and to twenty years in prison in JE's case.[3]

## II. Discussion

On appeal, Venancio raises three issues. In his first two issues, he argues that the trial court abused its discretion in two ways: first, by allowing Flores to testify as an outcry witness and second, by denying Venancio's motion for a continuance to procure Gibbins as a trial witness. In his third issue, Venancio asserts that he was deprived of his rights to the effective assistance of counsel and a fair trial. We will address each of these issues in turn.

### A.    Flores's Testimony as an Outcry Witness

In his first issue, Venancio argues that the trial court erred by allowing Flores to testify as an outcry witness because Flores was not the first adult to whom KE had disclosed the abuse.

---

[3]The trial court ordered that these sentences would run concurrently.

4

Article 38.072 of the Texas Code of Criminal Procedure creates a statutory exception to the general rule excluding hearsay. Tex. Code Crim. Proc. Ann. art. 38.072 § 2(b).

> Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse. This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime.

*Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005) (footnote omitted). The proper outcry witness is the "first person, 18 years of age or older, other than the defendant, to whom the child or person with a disability made a statement about the offense or extraneous crime, wrong, or act." Tex. Code Crim. Proc. Ann. art. 38.072 § 2(a)(3). The Court of Criminal Appeals has construed the phrase "about the offense" to mean a statement that "in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). "[T]he statement must be more than . . . a general allusion" of sexual abuse. *Id.* Thus, the proper outcry witness is not necessarily the first adult to whom the child revealed the abuse but, rather, the first adult to whom the child revealed specific details concerning the offense. *Id.*; *see also Brown v. State*, 381 S.W.3d 565, 572 (Tex. App.—Eastland 2012, no pet.) (affirming trial court's designation of forensic interviewer as outcry witness despite victim's prior disclosures of abuse to 911 dispatcher and responding police officer because the information provided to dispatcher and police officer did "not

touch upon the detail required when a defendant is charged with continuous sexual abuse of a young child"); *Thomas v. State*, 309 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (affirming trial court's determination that stepmother was proper outcry witness despite victim's prior report of abuse to mother because initial report to mother lacked specificity); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (explaining that counselor was proper outcry witness where complainant told mother that defendant "had touched her private parts" but later told counselor how, when, and where appellant had touched her).

Trial courts have "broad discretion" when determining what witnesses qualify as outcry witnesses, and therefore, appellate courts review those decisions under an abuse of discretion standard. *Garcia*, 792 S.W.2d at 92; *see Collins v. State*, No. 02-16-00146-CR, 2017 WL 119486, at *5 (Tex. App.—Fort Worth Jan. 12, 2017, pet ref'd) (mem. op., not designated for publication); *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd); *see also Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd) (noting that prior cases "establish the difficulty that can arise in identifying the proper outcry witness, and the broad discretion of district courts in making this determination"). Under this standard, "a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside 'the zone of reasonable disagreement' or is 'arbitrary or unreasonable.'" *Mendez v. State*, No. 03-19-00546-CR, 2021 WL 1148960, at *5 (Tex. App.—Austin Mar. 26, 2021, no pet.) (mem. op., not designated for publication) (first quoting *Lopez v. State*, 86 S.W.3d

6

228, 230 (Tex. Crim. App. 2002); and then quoting *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005)).

Venancio argues that the trial court abused its discretion by permitting Flores to testify as an outcry witness because KE had previously told Melendez that Venancio had raped her. However, the trial court could have reasonably concluded that KE's disclosure to Melendez lacked sufficient detail to qualify as an outcry statement. *See Garcia*, 792 S.W.2d at 91. KE's mere statement to Melendez that Venancio had "raped" her did not provide the specific details necessary to charge Venancio with the offense of which he was ultimately convicted—continuous sexual abuse of a child.[4] *See Solis v. State*, No. 02-12-00529-CR, 2014 WL 1663405, at *5 (Tex.

---

[4]To obtain a conviction for continuous sexual abuse with the underlying offense of aggravated sexual assault of a child, the State must prove that the defendant did one or more of the following:

(i) cause[d] the penetration of the anus or sexual organ of a child by any means;

(ii) cause[d] the penetration of the mouth of a child by the sexual organ of the actor;

(iii) cause[d] the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(iv) cause[d] the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(v) cause[d] the mouth of a child to contact the anus or sexual organ of another person, including the actor.

Tex. Penal Code Ann. § 22.021(a)(1)(B)(i)–(v); *see also id.* § 21.02(b)–(c).

7

App.—Fort Worth Apr. 24, 2014, no pet.) (mem. op., not designated for publication) (holding that victim's statements that defendant had "raped" and "molested" her and "touched her 'private areas'" did not describe the offenses of indecency with a child or aggravated sexual assault in any discernible manner and were therefore "no more than general allusions to sexual abuse"); *Brown*, 381 S.W.3d at 571–72 (holding victim's statements to 911 dispatcher that "her mom made her put her hands up in her" and that "her dad put his middle part up in her" and to responding officer that "her parents 'touched her in her private areas' and that her 'dad puts his male parts inside of her'" did not provide sufficient detail to describe the offense of continuous sexual abuse of a child); *see also Mendez*, 2021 WL 1148960, at *7 (holding trial court did not abuse its discretion by admitting testimony from a second outcry witness regarding later instances of abuse despite victim's statement to first outcry witness that defendant had "repeatedly raped" her because the trial court could reasonably have concluded that this was nothing more than a general allusion of abuse). Rather, it was what KE told Flores—that Venancio had removed her clothing and penetrated her vagina with his penis and his finger at a family gathering—that provided the specific details needed to charge Venancio with a criminal offense.

Because the trial court could have reasonably concluded that KE's statement to Melendez that she had been "raped" by Venancio was no more than a general allusion of sexual abuse and that her true outcry was to Flores—the first adult to whom she provided specific details of the offense—we cannot conclude that the trial court

8

abused its broad discretion by allowing Flores to testify as an outcry witness. *See Garcia*, 792 S.W.2d at 91–92.

We overrule Venancio's first issue.

## B.     The Denial of Venancio's Motion for Continuance

In his second issue, Venancio argues that the trial court erred by denying his oral motion for continuance to procure Gibbins as a trial witness. However, because this issue was not preserved for our review, Venancio has forfeited his complaint on appeal.[5]

Requests for continuance during trial are governed by Article 29.13 of the Texas Code of Criminal Procedure, which provides that

> [a] continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

---

[5]Neither party addressed this preservation issue in their appellate briefing. However, because "[p]reservation of error is a systemic requirement . . . [which] a court of appeals should review . . . on its own motion," we must nevertheless determine whether error was preserved before considering the merits of Venancio's argument. *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009); *see also Landaverde v. State*, Nos. 05-19-00175-CR, 05-19-00176-CR, 2020 WL 2897108, at *10 (Tex. App.—Dallas June 3, 2020, pet. ref'd) (mem. op., not designated for publication) (determining that appellant had not preserved error even though the State had not disputed whether the issue had been preserved).

Tex. Code Crim. Proc. Ann. art. 29.13. We review the denial of a motion for continuance for an abuse of discretion, giving a wide degree of deference to the trial court. *See Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002).

The law is clear that motions for continuance must be both written and sworn. *See* Tex. Code Crim. Proc. Ann. arts. 29.03, 29.08. Consequently, the Texas Court of Criminal Appeals has held that "if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (citing *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009)). In other words, "an unsworn oral motion preserves nothing for appeal." *Id.*; *see also Owens v. State*, No. 05-19-00371-CR, 2021 WL 5410518, at *2 (Tex. App.—Dallas Nov. 19, 2021, no pet.) (mem. op., not designated for publication) ("[W]e conclude appellant's oral motion for continuance preserved nothing for our review."); *Coleman v. State*, No. 02-18-00471-CR, 2020 WL 241975, at *20 (Tex. App.—Fort Worth Jan. 16, 2020, no pet.) (mem. op., not designated for publication) ("[I]f a party makes an unsworn, oral motion for continuance before or during trial and the trial court denies it, then the party forfeits the right to complain on appeal about the trial court's ruling."); *Robinson v. State*, 310 S.W.3d 574, 578–79 (Tex. App.—Fort Worth 2010, no pet.) ("[T]he denial of an oral motion for continuance preserves nothing for our review.").

Here, the record reflects that Venancio's motion for continuance to procure Gibbins as a trial witness was oral, not written. Indeed, Venancio acknowledges in his

brief that he orally requested the continuance. Because Venancio's motion for continuance was neither sworn nor written, he has preserved nothing for our review and has forfeited the right to complain about the trial court's ruling on the motion. *See Blackshear*, 385 S.W.3d at 591; *Owens*, 2021 WL 5410518, at *2; *Coleman*, 2020 WL 241975, at *20; *Robinson*, 310 S.W.3d at 578–79. Thus, we overrule Venancio's second issue on that basis.

We would reach the same conclusion, however, even if Venancio had preserved error. As Venancio concedes in his brief, a party seeking a continuance after trial has begun must show that unforeseeable circumstances or an unfair surprise justify delaying the proceedings to ensure the movant's right to a fair trial. *See* Tex. Code Crim. Proc. Ann. art. 29.13. Here, the State filed a motion in limine in July 2021 disclosing that Gibbins had been sentenced to fifty years in prison for multiple counts of sexual assault of a child and possession of child pornography. Moreover, the State did not include Gibbins on its list of potential trial witnesses filed in August 2021—more than a month before trial. Therefore, Venancio had more than a month to ascertain that Gibbins was not a witness relied upon by the State and to subpoena Gibbins, obtain a bench warrant, or otherwise secure his testimony. Thus, Venancio did not satisfy the statutory requirements for a continuance, and the trial court did not abuse its discretion in denying the motion. *See id.*; *Thursby v. State*, No. 05-19-00929-CR, 2020 WL 3566647, at *2 (Tex. App.—Dallas July 1, 2020, no pet.) (mem. op., not designated for publication) (concluding appellant who had sought a continuance to

11

procure a trial witness had not satisfied the requirements of Article 29.13 because the witness had not been designated by the State and appellant had therefore had nearly a month to subpoena the witness or otherwise secure his testimony).

We overrule Venancio's second issue.

### C.    Venancio's Right to the Effective Assistance of Counsel

In his third issue, Venancio argues that his trial counsel's performance was so deficient that it prejudiced his defense, denying him his rights to the effective assistance of counsel and a fair trial.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence both that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Prine v. State*, 537 S.W.3d 113, 116 (Tex. Crim. App. 2017); *see Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). We need not address both parts of the *Strickland* test if the appellant makes an insufficient showing of one component. 466 U.S. at 697, 104 S. Ct. at 2069.

An appellant claiming ineffective assistance of counsel at trial must identify counsel's allegedly erroneous acts and omissions. *Id.* at 690, 104 S. Ct. at 2066; *Cooper v. State*, 333 S.W.3d 859, 867 (Tex. App.—Fort Worth 2010, pet. ref'd). The appellate court then determines whether, in light of all the circumstances, these identified acts

12

or omissions were outside the wide range of what constitutes competent assistance. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *Cooper*, 333 S.W.3d at 867.

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). An attorney's isolated acts or omissions generally do not constitute deficient performance. *See, e.g.*, *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). However, an egregious error may satisfy both parts of the *Strickland* test on its own. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

Furthermore, the record must affirmatively demonstrate that the ineffective-assistance claim has merit. *Thompson*, 9 S.W.3d at 813. An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before

13

being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If, as here,[6] trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. We must ultimately focus on examining the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*, 104 S. Ct. at 2069.

---

[6]Venancio did not file a motion for new trial.

14

Venancio asserts that his trial counsel was deficient because he failed to (1) procure Gibbins as a trial witness; (2) object to extraneous bad act testimony or request a mistrial because the jury had been exposed to such testimony; and (3) present any mitigation evidence during the punishment phase of trial. We will address each of these alleged deficiencies in turn.

### 1. Failure to Procure Gibbins as a Witness

Venancio asserts that his counsel was deficient for failing to secure Gibbins as a trial witness. According to Venancio, Gibbins was a material witness because he was the primary detective in the initial investigation of KE's case. The primary reason that Venancio views Gibbins's testimony as pivotal is that, as part of his investigation, Gibbins purportedly prepared a report reflecting that, when asked, JE denied that Venancio had abused her. Venancio asserts that Gibbins's unavailability prevented his trial counsel from effectively questioning JE's credibility because Gibbins was unable to testify about his report.

Ordinarily, where—as here—no motion for new trial has been filed and there is thus no evidence in the record regarding trial counsel's reasoning behind a particular decision—including the failure to proffer evidence—we will assume a strategic motivation if any can be imagined. *Sabatini v. State*, No. 14-20-00066-CR, 2020 WL 7866724, at *7 (Tex. App.—Houston [14th Dist.] Dec. 31, 2020, no pet.) (mem. op., not designated for publication) (citing *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001)); *see Prine*, 537 S.W.3d at 117; *Lopez*, 343 S.W.3d at 143–

15

44. However, the record shows that Venancio's trial counsel's failure to procure Gibbins as a trial witness was not a strategic decision. Rather, as evidenced by his request for a bench warrant to have Gibbins produced for trial and his subsequent motion for continuance to allow sufficient time for Gibbins to be brought to court,[7] Venancio's trial counsel clearly wanted Gibbins to testify.

However, even assuming that Venancio's trial counsel had no strategic motivation—and was therefore deficient—for failing to procure Gibbins's testimony, we cannot conclude that this failure prejudiced Venancio's defense. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Prine*, 537 S.W.3d at 116. Venancio asserts that Gibbins's testimony was crucial to his defense because, without it, he was unable to effectively cross-examine JE by pointing out her prior inconsistent statement that she had not been abused. However, Venancio's trial counsel was still able to cross-examine JE regarding her prior inconsistent statement, and on redirect the State asked JE about her failure to disclose that she had been abused when she was interviewed during KE's case investigation. Thus, the jury was made aware of JE's previous denial of abuse despite Gibbins's unavailability at trial.

Moreover, the record suggests that even if Gibbins had been present at trial, there is a high likelihood that he would have refused to testify beyond asserting his Fifth Amendment right. Indeed, one of the prosecutors informed the trial court that

---

[7] *See supra* Section II.B.

16

she had spoken with Gibbins's former defense attorney and that he "anticipates, from his previous experience with Gibbins and conversations with . . . Gibbins, that he would plead the Fifth, would not cooperate in testifying, and would rather be held in contempt of Court than testify[]" because this is what he had done in a prior case. Further, the contents of any report prepared by Gibbins during his investigation of KE's case would be inadmissible hearsay. *See* Tex. R. Evid. 803(8)(A)(ii); *Belle v. State*, 543 S.W.3d 871, 876 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (noting that "in criminal cases, matters observed by police officers and other law enforcement personnel are excluded" from the public records exception to the hearsay rule); *Baker v. State*, 177 S.W.3d 113, 122-23 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("[H]ad the State attempted to offer Officer Green's actual report into evidence to prove that the observations contained in it were true, the report would properly have been excluded as inadmissible hearsay . . . given that Officer Green is a law-enforcement officer and that the report he prepared contains his observations."). Thus, it is far from clear that Gibbins's presence at trial would have provided any benefit to Venancio's defense.

Because Venancio has not shown that Gibbins's presence at trial would have changed the outcome of the case, we cannot conclude that Venancio's trial counsel's failure to procure Gibbins as a trial witness rendered his assistance ineffective. *See Strickland*, 466 U.S. at 700, 104 S. Ct. at 2071; *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex.

17

Crim. App. 2016) (stating that an appellant is prejudiced as a result of counsel's errors when, but for those errors, there is a reasonable probability of a different outcome).

### 2. Failure to Object to Extraneous Bad Act Testimony or to Request a Mistrial

Venancio argues that his trial counsel was also deficient for failing to (1) object to extraneous bad act evidence during his cross-examination of Officer Loughry and (2) request a mistrial based on the jury's exposure to such evidence.

During his cross-examination of Officer Loughry, Venancio's trial counsel asked the following questions to point out that JE's case stemmed from her initial statements to an assistant district attorney and that Officer Loughry's investigation had been limited:

| Counsel: | Okay. What did you do to prove this case? |
|---|---|
| Officer Loughry: | I had a consistent statement from the victim for the information that I'd been provided by the District Attorney's office. |
| Counsel: | When you say consistent, you mean the—whatever the victim said corresponds with what the DA was telling you? |
| Officer Loughry: | With what she had told the District Attorneys, yes. |
| Counsel: | Okay. Do you have any physical evidence to back it up? |
| Officer Loughry: | No. |
| Counsel: | No DNA test? |
| Officer Loughry: | Almost a decade after the fact, no. |

| Counsel: | Still, did you talk to the parents—to the parents of this child? |
|---|---|
| Officer Loughry: | I did not. |
| Counsel: | Did you talk to the neighbors? |
| Officer Loughry: | I did not. |
| Counsel: | What about school friends? |
| Officer Loughry: | No. |

Venancio's counsel then asked the following question, which elicited the extraneous bad acts testimony:

| Counsel: | Okay. Basically you are concluding what the DA told you? |
|---|---|
| Officer Loughry: | I'm concluding what she told me, and that between her and the sister *and the cousins that were also alleged victims*, that they had never discussed it with each other or anyone else, to my knowledge. [Emphasis added.] |

Venancio's counsel did not object to this testimony. Rather, he tried to ask one clarifying question before the trial court excused the jury.

Outside the presence of the jury Venancio's counsel asked Officer Loughry a series of questions regarding his investigation concerning JE's case and what Officer Loughry had meant when he mentioned "cousins" that were "also . . . victims." There was also a discussion among the trial court, the State, and Venancio's counsel regarding a prior no-billed case against Venancio involving one of JE's cousins as a victim. After this discussion and his additional questioning of Officer Loughry outside the presence of the jury, Venancio's counsel decided not to ask any follow-up

19

questions concerning the extraneous offense in front of the jury. Further, he asked the trial court to instruct the jury to disregard Officer Loughry's statement concerning other victims. The trial court then instructed the jury to disregard the word "victims" in Officer Loughry's response. There was no further mention of the cousins as alleged victims during the remainder of the trial.

Venancio claims that his trial counsel was deficient for failing to object to Officer Loughry's testimony referring to the cousins as additional victims and for failing to request a mistrial. However, "[f]ailure to object, without a record detailing the potential strategy behind doing so, generally does not rise to the level of ineffective assistance of counsel." *Tucker v. State*, No. 02-15-00363-CR, 2016 WL 7405802, at *5 (Tex. App.—Fort Worth Dec. 22, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Thompson*, 9 S.W.3d at 814); *see Burdick v. State*, No. 02-11-00171-CR, 2012 WL 4010415, at *5 (Tex. App.—Fort Worth Sept. 13, 2012, no pet.) (mem. op., not designated for publication) ("Because the record here is silent as to Counsel's reason for failing to object, we are constrained to hold that Appellant has failed to rebut the presumption that Counsel acted reasonably."); *Lopez v. State*, 80 S.W.3d 624, 629–30 (Tex. App.—Fort Worth 2002), (concluding that failing to object to the admission of extraneous offense evidence could not be found to be ineffective assistance without a record of counsel's strategy) *aff'd*, 108 S.W.3d 293 (Tex. Crim. App. 2003); *see also Touchette v. State*, No. 13-17-00270-CR, 2018 WL 4087744, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2018, pet.

20

ref'd) (mem. op., not designated for publication) (rejecting appellant's argument that his trial counsel had been deficient for failing to object to evidence of extraneous offenses because the record was silent regarding counsel's reasoning for not objecting); *Haagensen v. State*, 346 S.W.3d 758, 766 (Tex. App.—Texarkana 2011, no pet.) (determining that appellant had not shown his counsel was ineffective for not objecting to inadmissible evidence of extraneous offenses because the decision not to object could have been based on trial strategy). Here, the record's silence regarding defense counsel's reasoning for not objecting renders Venancio unable to rebut the presumption that his trial counsel acted reasonably. *See Thompson*, 9 S.W.3d at 814.

Moreover, even if Venancio's trial counsel acted unreasonably in failing to initially object to Officer Loughry's testimony, he promptly requested—and the trial court issued—a jury instruction to disregard the reference to other victims. Absent evidence in the record to the contrary, we generally presume that the jury followed the trial court's instructions to disregard evidence. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *see Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Here, because there is nothing in the record demonstrating that the comment had any harmful effect or that the jury was unable to follow the trial court's instruction to disregard, Venancio has failed to show that this instruction did not cure the error. *Berkley v. State*, 298 S.W.3d 712, 714 (Tex. App.—San Antonio 2009, pet. ref'd); *see also Zamora v. State*, No. 04-12-00275-CR, 2013 WL 979190, at *3–4 (Tex. App.—San Antonio Mar. 13, 2013, no pet.) (mem. op., not designated for

publication). Thus, even if Venancio's trial counsel was deficient for initially failing to object,[8] the error was promptly cured, and accordingly, Venancio cannot show that it prejudiced his defense. *See Strickland*, 466 U.S. at 700, 104 S. Ct. at 2071; *Ex parte Torres*, 483 S.W.3d at 43.

Given the trial court's instruction to disregard, we must also reject Venancio's argument that his trial counsel was deficient for failing to request a mistrial. "The failure of appellant's [defense] counsel to request a mistrial could only be termed an act of ineffective assistance of counsel if a mistrial should have been granted." *Thomas v. State*, 445 S.W.3d 201, 210 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (quoting *Weinn v. State*, 281 S.W.3d 633, 641 (Tex. App.—Amarillo 2009), *aff'd on other grounds*, 326 S.W.3d 189 (Tex. Crim. App. 2010)). However, a "mistrial is appropriate only 'when the objectionable event is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'" *Barba v. State*, 486 S.W.3d 715, 720 (Tex. App.—Texarkana 2016, no

---

[8]Citing *Walker v. State*, 195 S.W.3d 250 (Tex. App.—San Antonio 2006, no pet.), Venancio asserts that it is per se ineffective assistance of counsel to fail to object to inadmissible extraneous offense evidence. However, *Walker* does not support the existence of such a blanket per se rule. Indeed, the San Antonio Court of Appeals— the same court that decided *Walker*—has clearly stated that "the failure to object to inadmissible evidence, even extraneous offense evidence, does not necessarily constitute ineffective assistance." *Jaramillo v. State*, No. 04-02-00544-CR, 2003 WL 22491511, at *1 (Tex. App.—San Antonio Nov. 5, 2003, no pet.) (mem. op., not designated for publication) (quoting *Greene v. State*, 928 S.W.2d 119, 123 (Tex. App.—San Antonio 1996, no pet.)); *see also Touchette*, 2018 WL 4087744, at *4; *Haagensen*, 346 S.W.3d at 766; *Lopez*, 80 S.W.3d at 629–30.

pet.) (quoting *Cano v. State*, 3 S.W.3d 99, 109 (Tex. App.—Corpus Christi–Edinburg 1999, pet. ref'd)). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Here, because there is nothing in the record to suggest that the jury was unable to follow the trial court's instruction to disregard, a mistrial was not warranted. *See Ocon v. State*, 284 S.W.3d 880, 887 (Tex. Crim. App. 2009). Because a mistrial was not warranted and because the record is silent regarding defense counsel's reasoning for not requesting one, *see Thompson*, 9 S.W.3d at 813–14, we reject Venancio's argument that his trial counsel was deficient for failing to move for a mistrial.

### 3. Failure to Present Mitigating or Character Evidence during the Punishment Phase of Trial

Finally, Venancio claims that his trial counsel was deficient for failing to present any mitigating or character evidence during the punishment phase of trial. However, to prove the ineffective assistance of counsel based upon a failure to call witnesses to testify, an appellant must first show "that such witnesses were available and that appellant would have benefited from their testimony." *Tucker*, WL 7405802, at *8 (first citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); and then citing *Pollock v. State*, Nos. 02-02-00389-CR, 02-02-00390-CR, 2004 WL 966316, at *3 (Tex. App.—Fort Worth, May 6, 2004, pets. ref'd) (mem. op., not designated for publication)).

23

Here, Venancio has made no such showing. In his brief, Venancio states that his wife, daughter, son, and daughter-in-law all testified during the guilt/innocence phase of trial and presumes—without pointing to anything in the record—that they were available to testify during punishment. While it is true that after the jury's guilty verdict was read, Venancio's trial counsel stated that he anticipated putting on about three witnesses during the punishment phase, the record does not reflect who these expected witnesses were or what the nature of their testimony would be. Moreover, the record is silent regarding whether these witnesses appeared the following day when the punishment phase began. It is entirely possible that after being confronted during cross-examination with Venancio's admissions to Child Protective Services that he had accidentally touched KE's vagina and had been alone with her in his bedroom on at least one occasion where she supposedly acted in a sexual manner, Venancio's family members were no longer willing to testify. Further, there is no evidence that Venancio would have benefitted from their testimony. *See Tucker*, 2016 WL 7405802, at *8. Thus, even if Venancio's family members were available to testify, Venancio's trial counsel may have made a strategic decision not to call them as witnesses during the punishment phase. *See Sabatini*, 2020 WL 7866724, at *7 (citing *Garcia*, 57 S.W.3d at 441).

Because Venancio has not shown that there were any available witnesses that should have been called or that there was additional evidence that would have benefited him, we cannot conclude that his trial counsel was deficient for not

24

presenting any evidence during the punishment phase of trial. *See Tucker*, 2016 WL 7405802, at *8.

### 4. Totality of the Representation

Assuming without deciding that Venancio's trial counsel was deficient for initially failing to object to Officer Loughry's extraneous offense testimony, we have identified two aspects of his representation that were at least arguably deficient: (1) the failure to procure Gibbins as a trial witness and (2) the aforementioned failure to object. Having determined that neither of these omissions was prejudicial in and of itself, we likewise conclude that, viewed in their totality, they did not prejudice Venancio's defense. *See Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004). As noted above, Gibbins's unavailability at trial did not prejudice Venancio's defense because he was able to cross-examine JE—and make the jury aware of JE's prior denial of abuse—without him and because there was no guarantee that Gibbins would have testified beyond asserting his Fifth Amendment privilege even if he had been available. Further, even if Venancio's counsel erred by failing to object to Officer Loughry's extraneous offense testimony, he promptly cured the error by requesting and receiving a jury instruction to disregard the reference to "victims." Thus, we cannot conclude that Venancio's "counsel's conduct so undermined the proper functioning of the adversarial process" that it calls into question whether the trial court "produced a just result." *Strickland*, 466 U.S. at 686, 104 S. Ct. 2064.

We overrule Venancio's third issue.

## III. Conclusion

Having overruled all of Venancio's issues, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  December 15, 2022